1

## BATON ROUGE CITY COURT FOR THE PARISH OF EAST BATON ROUGE

### STATE OF LOUISIANA

NO. 21-00709                                                DIV. E

### MONIQUE MONTGOMERY

### VS.

### CAPITAL ONE BANK (USA), N.A.

FILED: _____                        DEPUTY CLERK: _____

### PETITION FOR CIVIL DAMAGES AND OTHER RELIEF

**NOW INTO COURT** comes Plaintiff, MONIQUE MONTGOMERY, pro se, who respectfully asserts an action to recover civil damages, penalties, injunctive, declaratory, and all other equitable relief against Defendant, CAPITAL ONE BANK (USA), N.A. for injuries sustained as a result of Defendant's conduct that caused and contributed to the misuse of her personal identifying information.

1.

### JURISDICTION AND VENUE

This Court has jurisdiction to grant Plaintiff actual, statutory, general, treble, successive damages under the Continuing Tort doctrine as well as other relief for claims under state law and venue is proper.

2.

### PARTIES

**Plaintiff**, Monique Montgomery, is a natural person who is the full age of majority and is domiciled in East Baton Rouge Parish. Plaintiff brings this action on behalf of herself.

**Defendant**, Capital One Bank (USA) N.A. (a subsidiary of Capital One Financial Corporation), is a federally-chartered banking institution with its principal place of business in Glen Allen, Virginia. Defendant is a resident of this state and may be served with process through its registered agent, Corporation Service Company, 501 Louisiana Avenue Baton Rouge, Louisiana 70802.

3.

### NATURE OF THE ACTION

This is an action that arises out of Defendant's tortious conduct that has enabled and resulted in identity theft. The claims asserted herein are premised on state Consumer Credit Law, Data Security Breach Notification Law, Unfair Trade Practices Act ("LUTPA"), Telephone Consumer Protection Act ("TCPA"), and civil torts under Articles 2315 and 2316. Damages for TCPA violations are recoverable under state law as stated in 47 U.S.C. 227(b)(3) according to Congress. Plaintiff invokes the Continuing Tort doctrine and the discovery provision of the *contra non valentem* doctrine which suspends prescription.

4.

### FACTUAL ALLEGATIONS

Defendant, Capital One Bank, is a "debt collector", in that engages in acts and maintains practices in connection with the collection of consumer debts in the ordinary course of business, regularly, on behalf of itself or others. However, Defendant is not entitled to act as a collection agency in Louisiana because it is not registered with the Secretary of State as required by La. R.S. 9:3534.1(B).

EXHIBIT B

Case 3:22-cv-00347-SDD-SDJ Document 1-2 05/27/22 Page 2 of 21

5.

Defendant receives its credit card applications electronically, over the phone, or through the mail. Defendant does not require credit applicants to submit copies of their state identification card or other proof of identity prior to issuing or mailing credit cards.

6.

Defendant maintains a pattern and practice of failing to verify the identities of its credit applicants and failing to implement or maintain any procedures or practices to protect the privacy and security of individuals in this state which has resulted in fraud and data breaches.

7.

In December 2015, Plaintiff learned of the existence of multiple financial accounts in her name that had been opened without her knowledge or authorization by an imposter who misused her personal identifying information. Among the accounts Plaintiff learned of was two Capital One Bank Visa branded credit cards and an auto loan ("Accounts"), issued and mailed by Defendant to an imposter at an address of which Plaintiff did not live in September 2012. Plaintiff has never applied for the credit, used or possessed the credit, goods, services, money, or property obtained by the identity theft and she has never made any payments.

8.

Plaintiff learned of the Accounts opened in her name upon reviewing her Experian, Equifax, and Transunion Consumer Reports in late December 2015. Plaintiff began sending written complaints through the mail to Defendant's place of business on or around January 2, 2016. Plaintiff has also mailed Cease and Desist notices to Defendant, but for nearly six years, Defendant has refused to cooperate.

9.

In those written complaints, Plaintiff made clear and unambiguous representations indicating that the Accounts were opened in her name without authorization and she requested that Defendant close the Accounts and delete the information furnished to Experian, Equifax, and Transunion (collectively referred to as "Credit Reporting Agencies" or "CRAs"). These written complaints were made **two years prior** to any disputes made through CRAs.

10.

From January 2016 to June 2019, Plaintiff mailed at least 12 complaints to Defendant's place of business. Defendant received those complaints but willfully ignored them for at three and a half year timeframe.

11.

Defendant maintains a pattern and practice of using an automatic telephone dialer system ("ATDS"). Plaintiff received at least 200 phone calls from Defendant's ATDS and over 70 text messages seeking to obtain money from her. Defendant knew or should have known that it did not have Plaintiff's consent upon receipt of her complaints but proceeded to use ATDS against her wishes anyways.

12.

In June 2019, Defendant made verbal representations to Plaintiff demanding that she attach copies of her driver's license and social security card to her written complaint. Upon asking for the reason that the documentation was being required, Defendant stated that it was only required to close to the Account and delete it from CRAs. Based on those representations, Plaintiff had a genuine belief that Defendant would act in good faith.

13.

Defendant intentionally misrepresented its intended use for that documentation. Plaintiff mailed Defendant those requested copies, but instead of closing the Account and deleting it from CRAs as it promised to do, Defendant proceeded with fraudulent intent to demand undue payments from her anyways.

14.

Defendant's employees are trained to make reckless decisions in investigations on consumer disputes of debt. From June 2019 to present, all of Plaintiff's disputes were denied without explanation and with the intent to coerce undue payments from her. Each time that Plaintiff has called Defendant's place of business to get an understanding of the reason why her identity theft claims were denied, Defendant's employees made verbal representations to her stating that the claims were denied due to a payment being made on the Account. Plaintiff informed Defendant that she never made any payments but Defendant denied the claims anyways.

15.

Defendant trains its employees to solely base investigation decisions on Defendant's ability to financially profit from the identity theft at the expense of the consumer. Defendant knows that a payment made on the Account may infer consent in some instances so it uses unsubstantiated allegations of a payment as a means to justify its illegal collection efforts without actually conducting an investigation.

16.

Defendant's procedures and practices are obviously inadequate to protect consumers' personal identifying information from unauthorized disclosure, use, or modification including Plaintiff's. Defendant intentionally delays its investigations and closure of accounts pending the receipt of copies of the consumers' personal identifying information. By allowing the Accounts to remain opened, the risk of further fraudulent transactions and misuse of personal identifying information is substantially increased.

17.

Around August or September of 2016 to present, Defendant has engaged in illegal collection efforts and extortion. Plaintiff received collection phone calls from Defendant's place of business stating that the Accounts were past due. In those phone calls, Plaintiff orally disputed the Accounts and requested that they stop making collection efforts, but Defendant continued with collection efforts anyways. The debt is nonexistent, the parties have never entered into a credit agreement, and Defendant is not licensed as a debt collector in this state.

18.

On July 29, 2019, Defendant publicly announced the following: "[O]n July 19, 2019, it determined there was unauthorized access by an outside individual who obtained certain types of personal information relating to people who had applied for its credit card products and to Capital One credit card customers . . . . Based on our analysis to date, this event affected approximately 100 million individuals in the United States and approximately 6 million in Canada. . . . The largest category of information accessed was information on consumers and small businesses as of the time they applied for one of our credit card products from 2005 through early 2019.

19.

Defendant further disclosed that the breached Sensitive Information included:

(a) Personal information, including names, addresses, zip codes/postal codes, phone numbers, email addresses, dates of birth, and self reported income;

(b) Customer status data, e.g., credit scores, credit limits, balances, payment history, contact information;

(c) Fragments of transactional data from a total of 23 days during 2016, 2017, and 2018;

(d) About 140,000 Social Security numbers of its credit card customers; and

(e) About 80,000 linked bank account numbers of its secured credit card customers.

20.

The Data Breach that had occurred on March 22 and 23, 2019, was discovered by Defendant only in July 19, 2019 and publicly disclosed on July 29, 2019, over four months after the Sensitive Information of over 100 million customers and credit card applicants were breached. Defendants apparently continued to allow the hacker to intrude their systems at least until April 21, 2019. Defendants only discovered the Data Breach after an individual previously unknown to Capital One sent the following email to Capital One providing a link to a file containing the leaked Sensitive Information. The file provided in the link, which was time-stamped April 21, 2019, also contained code for commands used in the intrusion, as well as a list of more than 700 folders or buckets of data.

21.

Defendant had obligations, arising from promises made to its credit card applicants and customers, and based on industry standards, to keep the Sensitive Information confidential and to protect it from unauthorized disclosure. Capital One promises customers that it will keep their Sensitive Information confidential, assuring customers on its credit card applications explicitly that "Capital One uses 256-bit Secure Sockets Layer (SSL) technology. This means that when you are on our website, the data transferred between Capital One and you is encrypted and cannot be viewed by any other party."

22.

Defendant's security failures demonstrate that it failed to honor its duties and promises by not:

(a) maintaining an adequate data security system to reduce the risk of data breaches and cyber-attacks;

(b) adequately monitoring its system to identify the data breaches and cyber-attacks; and

(c) adequately protecting Plaintiff's and the Class's Sensitive Information.

(d) Plaintiff has been injured by the disclosure of their Sensitive Information in the Data Breach.

Defendants' data security obligations are particularly important given substantial increase in data breaches, which were widely known to the public and to anyone in Defendant's industries.

23.

Defendants had ample warnings of weaknesses and risks to its systems, as they have had multiple security breaches in the past. On or about January 2018, Capital One suffered a data breach that compromised 50GB worth of sensitive data that contained highly sensitive information that put Capital One's network at significant risk. In addition, Defendants have issued formal letters to an undisclosed number of their customers informing that their personal information may have been breached, in numerous other occasions including the letters issued on or about November 2014, July 28, 2017, July 31, 2017, and September 12, 2017.

24.

Plaintiff invokes the Voluntary Assumption of Duty doctrine regarding Defendant's duty to protect Plaintiff from identity theft by making representations on its website indicating that "your security is a top priority". See https://www.capitalone.com/digital/identity-protection/. Defendant also advertises a "$0 fraud liability policy" and makes representations indicating that it is guaranteed.

25.

The advertisement states that "you will never have to pay for unauthorized charges due to $0 fraud liability with Capital One". Since the advertisements are devoid of disclosures indicating that restrictions to the policy may apply, Defendant is obviously extending that protection to all customers, potential customers, and victims of identity theft.

26.

Plaintiff has requested copies of the information in the Accounts from Defendant at least 15 times. Defendant repeatedly refused to furnish copies of the account records ("Records") to her having full knowledge that she had no access to them without its cooperation.

27.

In June 2019, the parties entered into an oral contract. Defendant offered to close the Accounts and delete the false representations in exchange for an additional written complaint, copy of her social security card, and copy of her driver's license. When the parties orally discussed the terms of that contract, Defendant knew that its performance was time-sensitive, but Defendant has still not performed on that contract which has exposed Plaintiff to further breach of her privacy and security.

28.

## LEGAL ARGUMENT

### Continuing Tort

Plaintiff invokes the Continuing Tort doctrine for all claims asserted against Defendant and all conduct was continuous and caused her continuous damage. As for the general basis of Defendant's obligations to Plaintiff, all claims are premised on Defendant's duty to protect Plaintiff from identity theft and unauthorized use of her personal information. Defendant conduct began in 2012 and has remained giving rise to successive damages. Defendant has still not ceased its wrongful. "Where the cause of the injury is a continuous one giving rise to successive damages, prescription dates from cessation of the wrongful conduct causing the damage."" *Capitol House v. Perryman*, No. 98 CA 2216, 1197 (La. Ct. App. 1 Cir. 2000).

29.

Banks and financial institutions operate at their peril when they disregard established security measures designed to limit the disclosure of confidential consumer information or extend credit without sufficient verification. See, e.g., California Public Interest Group. Theft of Identity: The Consumer X-Files (1996), at 20-21.

30.

### Duty to Protect Non-Customers

Undoubtedly, Defendant has the legal duty to protect non-customers from identity theft. The Database Security Breach Notification Law states that businesses play a fundamental role in the cause of identity theft by their acts or omissions. Revised Statute 51:3074(A) contains the mandatory language stating that "any person" that conducts

business in this state or owns or licenses computerized data "shall" protect personal information by simply being in
possession of it.

31.

The Database Security Breach Notification Law does not contain any provisions requiring a business/customer
relationship or any provisions that preempts a bank or financial institution from liability. In fact, La. R.S. 51:3074(J)
even recognizes that a violation to R.S. 51:3074 is an unfair act or practice under LUTPA. Such unfair act or
practice is grounds for a private action for civil and treble damages as set forth in La. R.S. 51:1409. Plaintiff has
mailed a copy of this petition to the Attorney General.

32.

Louisiana law provides that financial institutions, retail merchants, and other persons that issue credit cards and
loans have a duty to protect non-customers. The language in the La. R.S. 9:3518.2 of Louisiana Consumer Credit
law imposes third party liability on a bank or financial institution whose business practices facilitated the consumer
victim's injuries by mailing or delivering the credit cards to an unauthorized person. This statute is very specific in
the intent to protect all consumers in this state from the acts or omissions of an issuer and that the lender/customer
relationship between is irrelevant to the imposition of Defendant's duty. It states that it is "unlawful" to mail or
deliver "any credit card" in this state without certain conditions being met. Although the words "fraud" or "identity
theft" is not specifically included in this statute, it is conspicuously implied in paragraph D which states that an
issuer is liable for damages when a person "has not requested or accepted by use the issuance of such credit card".
La. R.S. 9:3518.2(D).

33.

Defendant assumes the liability by simply having possession of personal information and failing to implement
adequate procedures and practices to protect that information. Courts have heavily relied on the public policy needs
of assuring that banks and financial institutions keep highly sensitive information confidential and safe as well as the
provisions of the Know Your Customer rule ("KYC"). Sound KYC procedures must be seen as a critical element in
the effective management of banking risks. KYC safeguards go beyond simple account opening and record-keeping
and require banks to formulate a customer acceptance policy and a tiered customer identification programmes. See
Basel  Committee  on  Banking  Supervision,  Customer  Due  Diligence  for  Banks,  October  2001.
http://www.bis.org/publ/bcbs85.pdf.

34.

Banks stand in the intimate relation of a fiduciary to those who are their customers, depositors, stockholders, and
associate banks, as well as the public generally, whose members are affected by their operation. The imposition of
tort liability is appropriate because the fraudulent scheme effectuated at Defendant's place of business, as well as the
injury and harm it caused Plaintiff, was foreseeable to the extent that a duty may be imposed. It is foreseeable to
banks that failing to follow identification procedure will greatly increase the risk of fraud.

35.

By collecting and storing Plaintiff's personal information, and sharing it and using it for commercial gain,
Defendant had a duty of care to use reasonable means to secure and safeguard this Sensitive Information, to prevent
disclosure of the information, and to guard the information from theft. Defendant's duty included a responsibility to

Case 3:22-cv-00347-SDD-SDJ Document 1-2 05/27/22 Page 7 of 21

7

implement a process by which they could detect a breach of their security systems in a reasonably expeditious period of time and give prompt notice to those affected in the case of a data breach.

36.

## Voluntary Assumption of Duty

Plaintiff invokes the language of Civil Code Article 2908 that governs the liability of lenders and the Voluntary Assumption of Duty doctrine. "We acknowledge the general principle of law that a duty of protection which is voluntarily assumed must be performed with due care, as discussed in *Harris v. Pizza Hut of Louisiana, Inc.*, 455 So.2d 1364 (La. 1984)." *Johnson v. Lloyd's of London*, No. 26,813-CA, 5 (La. Ct. App. 2 Cir. 1995).

37.

Defendant undertook the voluntary assumption of duty to cooperate with Plaintiff's identity theft claims by advertising "zero fraud liability' policies to its customers and potential customers. By refusing to close the Accounts on Plaintiff's requests, Defendant clearly intended to voluntarily bind itself to the same duties that are imposed for a lender/borrower relationship.

38.

## Oral Contract

Upon receipt of Plaintiff's consumer fraud complaints, Defendant knew of the fraud. An implied covenant of good faith was established between the parties when Plaintiff sent copies of her social security card and her driver's license in exchange for Defendant's offer to close the Accounts and delete the credit entries that had been furnishing to CRAs. Plaintiff relied on Defendant's performance to her detriment. La. C.C. Art. 1768 (conditions may be either expressed in a stipulation or implied by the law, the nature of the contract, or the intent of the parties). *Terrebonne P. v. Castex E.*, 878 So. 2d 522, 528 (La. Ct. App. 1 Cir. 2004)

39.

## Foreseeable Damage to Victims of Identity Theft

The United States Government Accountability Office noted in a June 2007 report on Data Breaches ("GAO Report") that identity thieves use identifying data such as Social Security Numbers to open financial accounts, receive government benefits and incur charges and credit in a person's name. 3 As the GAO Report states, this type of identity theft is the most harmful because it often takes some time for the victim to become aware of the theft, and the theft can impact the victim's credit rating adversely.

40.

The GAO Report states that victims of identity theft will face "substantial costs and inconveniences repairing damage to their credit records" and their "good name." See U.S. Gov't Accountability Off., GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft is Limited; However, the Full Extent Is Unknown (2007). 4 Id., at 2, 9.

41.

Identity theft victims frequently are required to spend many hours and large amounts of money repairing the impact to their credit. Identity thieves use stolen personal information such as social security numbers ("SSNs") for a variety of crimes, including credit card fraud, phone or utilities fraud, and/or bank/finance fraud.

42.

There may be a time lag between when Sensitive Information is stolen and when it is used. According to the GAO Report: "[L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm."

43.

With access to an individual's Sensitive Information, criminals can do more than just empty a victim's bank account—they can also commit all manner of fraud, including: obtaining a driver's license or official identification card in the victim's name but with the thief's picture: using the victim's name and SSN to obtain government benefits; or, filing a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's SSN, rent a house, or receive medical services in the victim's name. Identity thieves may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.

44.

Sensitive Information is such a valuable commodity to identity thieves that once the information has been compromised. criminals often trade the information on the "cyber black-market" for years. As a result of recent large-scale data breaches, identity thieves and cyber- criminals have openly posted stolen credit card numbers, SSNs, and other Sensitive Information directly on various Internet websites making the information publicly available. Indeed, data breaches and identity theft have a crippling effect on individuals and detrimentally impact the entire economy as a whole. Financial databases are especially valuable to identity thieves.

45.

The facts concerning the Data Breach are material to this instant case. If Defendant had taken action in a timely manner to protect Plaintiff's privacy and security upon being notified of fraud in January 2016, Plaintiff would have never been exposed further risk from the Data Breach that occurred over three years later. The four-month timeframe that it took for Defendant to be notified of the Data Breach has yielded a substantial increase of risk of harm to Plaintiff that is likely to result in the oppressive burden of cleaning up the aftermath of Defendant's negligence for several years.

46.

If banks fail to apply an appropriate level of due diligence to such accounts, they expose themselves to the range of risks and may find themselves holding and/or transmitting money linked to corruption, fraud or other illegal activity. See Basel Committee on Banking Supervision. Customer Due Diligence for Banks, October 2001, http://www.bis.org/publ/bcbs85.pdf.

47.

**Willful Violations**

Defendant has willingly and intentionally participated in identity theft by allowing the fraudulent Accounts to remain open against Plaintiff's will and proceeding to demand undue payments from her for a nonexistent debt. In support of Defendant's full knowledge of the fraud, Plaintiff relies on a judicial confession that Defendant made in a

pleading filed at the United States Middle District Court in a previously filed lawsuit concerning the exact same matters. In that judicial confession, Defendant referred to Plaintiff as a **"non-customer"** on July 28, 2020.

48.

After the previous suit was voluntarily dismissed by Plaintiff in 2020, Defendant communicated a threat of harm to Plaintiff to obstruct her right to be compensated for damages that it caused her. Defendant made a written offer to delete the defamatory statements but only if she waived her right to sue. Due to Plaintiff's desire to maintain her rights, Defendant has continued to make defamatory statements in retaliation against her.

49.

Even after Plaintiff declined the offer, Plaintiff continued making direct consumers disputes of the invalid debts, but Defendant still refuses to delete them in retaliation and has instructed its employees not to accept any further disputes.

50.

Defendant made material misrepresentations to Plaintiff that induced her to send copies of her driver's license and social security card. Plaintiff invokes the language of the Criminal Code Revised Statutes 14:67.16. Defendant has intentionally engaged in identity theft by possessing and using her personal identifying information with the fraudulent intent to obtain money from her without authorization.

51.

Defendant's willful participation in identity theft engenders a substantially increased risk of fraud by Defendant and others. That information can be used at any time in the future since it has obtained copies of Plaintiff's social security card and driver's license for an improper purpose. Plaintiff's privacy and security will forever remain at risk and has caused Plaintiff emotional distress as a result.

52.

By continuing to engage in illegal collection efforts after receiving reports of fraud and furnishing false representations to CRAs, Defendant intentionally engaged in extortion and exerted duress. See *Quina v. Roberts*, 16 So. 2d 558 (Orl. App. 1944). See also *Tuyes v. Chambers*, 144 La. 723, 81 So. 265 (1919).

53.

## TCPA

This Court has the inherent power to rule on matters governing TCPA. The First Circuit has heard TCPA claims in the past and has held that recovery is available in state court. "Private citizens whose rights under the TCPA have been violated may sue to enjoin future transmissions, recover the greater of actual monetary damages or $500 in damages for each such fax, or obtain injunctive relief plus damages." *Paradise v. AL Copeland Investments, Inc.*, 22 So. 3d 1018, 1023 (La. Ct. App. 1 Cir. 2009).

54.

## Civil Penalties and Treble Damages

Plaintiff seeks the imposition of civil penalties and treble damages against Defendant for willful violations to Louisiana Consumer Credit Law and LUTPA.

55.

Treble damages are permitted by the clear and unambiguous language of Louisiana Consumer Credit Law in R.S. 9:3518.2(D) which provides that "the issuer shall be liable...for any damages and expenses or either, including attorney fees..."

56.

"Under the Louisiana Consumer Credit Law the consumer may recover a 'civil penalty' equal to 'three times the amount' if the extender of credit has intentionally violated or is found to be in bad faith in violating the provisions of the Consumer Credit Law." *International Harvester Credit v. Seale*, 518 So. 2d 1039, 1042 (La. 1988).

57.

"A consumer is entitled to three times her actual damages where a court finds that an unfair or deceptive trade method was knowingly used by the defendant. LA. R.S. § 9:51:1409(A)." *Adams v. Phillips*, CIVIL ACTION NO: 01-3803, SECTION: "J"(5), (E.D. La. Dec. 19, 2002).

58.

By willfully and recklessly participating in the identity theft, Defendant's conduct is criminal and shows that it has absolutely no respect for the law or the general public. Defendant obviously preys on victims of identity theft for financial gain and its refusal to cooperate with identity theft claims impedes the criminal prosecution of imposters and obstructs victims' recovery from identity theft.

59.

Defendant's conduct threatens the general public and is highly offensive to strong public policy. It also promotes and enables criminal activity, diminishes the public confidence in the banking and financial system, and puts millions of lives at risk of physical harm. Victims are at a disadvantage to recover their losses in court because they cannot afford a lawyer after incurring all the expenses of cleaning up Defendant's mess.

60.

Defendant's conduct constitutes a wanton and reckless disregard for public safety. All victims of identity theft live in fear and paranoia of someone breaking into their homes, depleting their money at financial institutions, having their assets seized by judgment creditors, being arrested by the police for erroneous warrants, being denied for employment, or even being murdered. The possibility of harm is unlimited because no one has control or any knowledge of who may have access to their Sensitive Information after the breach has occurred.

61.

Defendant's conduct substantially increases the civil and criminal liability to the government as well as state agents who may act based on a mistaken identity because victims have no reasonable way of anticipating how many imposters have created a fraudulent identification card in their names.

62.

Being subjected to numerous lawsuits for similar matters has not deterred Defendant's conduct. Based on the facts alleged herein, it is a necessary penalty for the protection of public interest for punitive damages to be imposed Plaintiff.

63.

**Mandatory Litigation Expenses**

11

Plaintiff's claims asserted under Revised Statutes 9:3568(D), 9:3518(D); 51:1409 include mandatory language for the recovery of reasonable attorney's fees.

64.

### Injuries Sustained by Plaintiff

As a direct and proximate result of Defendant's misconduct, Plaintiff has suffered injuries to her privacy, security, reputation, credit rating, diminished credit line, loss of ability to obtain credit, loss of ability to purchase from a credit, loss of ability to benefit from a credit line.

65.

At least nine other fraudulent Accounts have been opened in Plaintiff's name since Defendant issued credit to the imposter in 2012. Plaintiff has had to endure harassment from third party debt collectors, has had other creditors threaten to sue her, has been terminated by her employer, has been rejected for employment that is commensurate with her professional qualifications, and has also had warrants for her arrest erroneously issued in her name for traffic violations that she never committed.

66.

As a result of Defendant's conduct, Plaintiff's recovery from the identity theft necessitates declaratory and injunctive relief as well as an equitable estoppel.

67.

## CLAIMS FOR DAMAGES

### FIRST CAUSE OF ACTION

#### (False Light)

Plaintiff re-alleges and incorporates by reference of the preceding allegations as though fully set forth hereafter. Defendant acted in reckless disregard by furnishing false and embarrassing representations about Plaintiff's integrity to CRAs by asserting that she has a negative history of failing to pay her debts. These false light representations are highly offensive to any reasonable person of ordinary sensibilities who are seeking to benefit from their credit history because it substantially lowered Plaintiff's credit rating and deterred her employer, potential employers, insurance carriers, and potential lenders from dealing with her. The actions taken by Defendant were done wantonly, recklessly, and willfully.

68.

Defendant's conduct was continuous and caused Plaintiff continuous damage. It was foreseeable that such false light representations would lead to severe, permanent, and debilitating injuries of Plaintiff's person, privacy, security, creditworthiness, and employment. As a direct and proximate result of Defendant putting her in a false light, Plaintiff has suffered, and will continue to suffer emotional distress and mental suffering, loss of past, present, and future wages, humiliation, embarrassment, loss of reputation, loss of social standing, loss of enjoyment of life, loss of consortium, and economic loss as alleged herein.

69.

### SECOND CAUSE OF ACTION

#### (Fraudulent Inaction)

12

Plaintiff re-alleges and incorporates by reference of the preceding allegations as though fully set forth hereafter. Defendant intentionally breached its lawful duty to take reasonable measures to implement and maintain procedures and practices to protect Plaintiff's personal information from misuse after receiving reports of fraud. Defendant knew or should have known that Plaintiff's personal information was being misused by the imposter but Defendant allowed the Account to remain open against Plaintiff's wishes. The actions taken by Defendant were done with malice, were done wantonly, recklessly, and willfully, and were done with desire to harm Plaintiff.

70.

Defendant's conduct was continuous and caused Plaintiff continuous damage. It was foreseeable that such fraudulent inaction would lead to severe, permanent, and debilitating injuries of Plaintiff's person, privacy, security, and employment Plaintiff. As a direct and proximate result of Defendant's fraudulent inaction, Plaintiff has suffered, and will continue to suffer emotional distress and mental suffering, loss of past, present, and future wages, humiliation, embarrassment, loss of reputation, loss of social standing, loss of enjoyment of life, loss of consortium, and economic loss as alleged herein. Plaintiff also has an increased risk of actual or imminent harm to her physical safety, money, privacy interest, and property.

71.

### THIRD CAUSE OF ACTION

#### (Intentional Misrepresentation)

Plaintiff re-alleges and incorporates by reference of the preceding allegations as though fully set forth hereafter. Defendant intentionally made material misrepresentations that deceptively induced Plaintiff to send copies of her driver's license and social security card. Defendant's misrepresentations were intended to obtain the unjust advantage of substantiating its illegal collection efforts on a nonexistent debt. Plaintiff justifiably relied on Defendant's representations to her detriment. The actions taken by Defendant were done with malice, were done wantonly, recklessly, and willfully, and were done with desire to harm Plaintiff.

72.

Defendant's conduct was continuous and caused Plaintiff continuous damage. It was foreseeable that such conduct would lead to severe, permanent, and debilitating injuries of Plaintiff's person, privacy, security, and employment. As a direct and proximate result of Defendant's intentional misrepresentation, Plaintiff has suffered, and will continue to suffer emotional distress and mental suffering, loss of past, present, and future wages, humiliation, embarrassment, loss of reputation, loss of social standing, loss of enjoyment of life, loss of consortium, and economic loss as alleged herein. Plaintiff also has an increased risk of actual or imminent harm to her physical safety, money, privacy interest, and property.

73.

### FOURTH CAUSE OF ACTION

#### (Abusive Debt Collection Practices)

Plaintiff re-alleges and incorporates by reference of the preceding allegations as though fully set forth hereafter. Defendant is not licensed as a debt collector in this state. Defendant made repeated efforts to collect on a debt that it

knew that Plaintiff did not owe. The actions taken by Defendant were done with malice, were done wantonly, recklessly, and willfully, and were done with desire to harm Plaintiff.

74.

Defendant's conduct was continuous and caused Plaintiff continuous damage. It was foreseeable that such conduct would lead to severe, permanent, and debilitating injuries of Plaintiff's person, privacy, security, and employment. As a direct and proximate result of Defendant's abusive debt collection practices, Plaintiff has suffered, and will continue to suffer emotional distress and mental suffering, loss of past, present, and future wages, humiliation, embarrassment, loss of reputation, loss of social standing, loss of enjoyment of life, loss of consortium, and economic loss as alleged herein.

75.

## FIFTH CAUSE OF ACTION

### (Abuse of Right)

Plaintiff re-alleges and incorporates by reference of the preceding allegations as though fully set forth hereafter. Defendant has the right to collect and store Sensitive Information upon receipt of credit applications and has the right to request copies of Plaintiff's driver's license and social security card in support of its investigations for identity theft. Defendant intentionally used those rights with the predominate motive of blackmailing Plaintiff. Defendant's conduct violated moral rules, good faith, and elementary fairness. The actions taken by Defendant were done with malice, were done wantonly, recklessly, and willfully, and were done with desire to harm Plaintiff.

76.

Defendant's conduct was continuous and caused Plaintiff continuous damage. It was foreseeable that such abuse of right would lead to severe, permanent, and debilitating injuries of Plaintiff's person, privacy, security, and employment Plaintiff. As a direct and proximate result of Defendant's abuse of right, Plaintiff has suffered, and will continue to suffer emotional distress and mental suffering, loss of past, present, and future wages, humiliation, embarrassment, loss of reputation, loss of social standing, loss of enjoyment of life, loss of consortium, and economic loss as alleged herein. Plaintiff also has an increased risk of actual or imminent harm to her physical safety, money, privacy interest, and property.

77.

## SIXTH CAUSE OF ACTION

### (Extortion)

Plaintiff re-alleges and incorporates by reference of the preceding allegations as though fully set forth hereafter. Defendant knowingly communicated a threat of harm to Plaintiff by harassing her via telephone and making defamatory statements about her to others with the intent to coerce payments. Defendant knew that Plaintiff was desperate to have her credit restored from the damage of identity theft so it availed itself to extortion in an illegal attempt to force her to pay the debt against her will. The actions taken by Defendant were done with malice, were done wantonly, recklessly, and willfully, and were done with desire to harm Plaintiff.

78.

Defendant's conduct was continuous and caused Plaintiff continuous damage. It was foreseeable that such extortion would lead to severe, permanent, and debilitating injuries of Plaintiff's person, privacy, security, and employment. As a direct and proximate result of Defendant's extortion, Plaintiff has suffered, and will continue to suffer emotional distress and mental suffering, loss of past, present, and future wages, humiliation, embarrassment, loss of reputation, loss of social standing, loss of enjoyment of life, loss of consortium, and economic loss as alleged herein. Plaintiff also has an increased risk of actual or imminent harm to her physical safety, money, privacy interest, and property.

79.

## SEVENTH CAUSE OF ACTION

### (La. R.S. 51:1409 under LUTPA)

Plaintiff re-alleges and incorporates by reference of the preceding allegations as though fully set forth hereafter. According to the Data Security Breach Law in R.S. 51:3074(J), Defendant's failure to implement and maintain reasonable procedures and practices to protect Plaintiff's personal information from authorized access, destruction, use, modification, and disclosure constitutes a LUTPA violation under R.S. 51:1405 which is grounds for a private right of action. Defendant's conduct was unfair, unscrupulous, and highly offensive to public policy. The actions taken by Defendant were done with malice, were done wantonly, recklessly, and willfully, and were done with desire to harm Plaintiff.

80.

Defendant's conduct was continuous and caused Plaintiff continuous damage. It was foreseeable that such conduct would lead to severe, permanent, and debilitating injuries of Plaintiff's person, privacy, security, and employment. As a direct and proximate result of Defendant's third party identity theft, Plaintiff has suffered, and will continue to suffer emotional distress and mental suffering, loss of past, present, and future wages, humiliation, embarrassment, loss of reputation, loss of social standing, loss of enjoyment of life, loss of consortium, and economic loss as alleged herein. Plaintiff also has an increased risk of actual or imminent harm to her physical safety, money, privacy interest, and property.

81.

## EIGHTH CAUSE OF ACTION

### (La. R.S. 9:3518.2(D) Under Consumer Credit Law)

Plaintiff re-alleges and incorporates by reference of the preceding allegations as though fully set forth hereafter. Defendant mailed or delivered three credit cards as defined in R.S. 9:3518.2 in Plaintiff's name to an imposter without her consent. Plaintiff never requested the credit cards or accepted by use of the credit cards. Upon receiving reports that it was opened in Plaintiff's name as a result of identity theft, Defendant took no action to close the Accounts. The actions taken by Defendant were done with malice, were done wantonly, recklessly, and willfully, and were done with desire to harm Plaintiff.

82.

Defendant's conduct was continuous and caused Plaintiff continuous damage. It was foreseeable that such conduct would lead to severe, permanent, and debilitating injuries of Plaintiff's person, privacy, security, and employment Plaintiff. As a direct and proximate result of Defendant's unsolicited delivery of a credit card, Plaintiff has suffered,

and will continue to suffer emotional distress and mental suffering, loss of past, present, and future wages, humiliation, embarrassment, loss of reputation, loss of social standing, loss of enjoyment of life, loss of consortium, and economic loss as alleged herein. Plaintiff also has an increased risk of actual or imminent harm to her physical safety, money, privacy interest, and property.

83.

## NINTH CAUSE OF ACTION

### (Defamation)

Plaintiff re-alleges and incorporates by reference of the preceding allegations as though fully set forth hereafter. Defendant furnished false representations about Plaintiff to CRAs and others indicating that she had defaulted on credit cards and a loan in the approximate amount of $14,000. Defendant knew of the falsity but took no action to prevent the false information from remaining on her Consumer Reports. Defendant included statements such as such as "late payments" and "charge off". Defendant had no justifiable motive or qualified privilege because Plaintiff is a non-customer. Defendant's statements concerning Plaintiff were false, publicized, defamatory, actionable by a special showing of harm. The actions taken by Defendant were done with malice, were done wantonly, recklessly, and willfully, and were done with desire to harm Plaintiff.

84.

Defendant's conduct was continuous and caused Plaintiff continuous damage. It was foreseeable that such defamation would lead to severe, permanent, and debilitating injuries of Plaintiff's person, privacy, security, and employment. As a direct and proximate result of Defendant's defamatory statements, Plaintiff has suffered, and will continue to suffer emotional distress and mental suffering, loss of past, present, and future wages, humiliation, embarrassment, loss of reputation, loss of social standing, loss of enjoyment of life, loss of consortium, and economic loss as alleged herein.

85.

## TENTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

Plaintiff re-alleges and incorporates by reference of the preceding allegations as though fully set forth hereafter. Defendant's willingly participated in extortion, identity theft, and unreasonable collection efforts on a nonexistent debt knowing that it is not licensed debt collector in this state. Defendant's conduct was unreasonable, extreme, and outrageous and was intended to cause Plaintiff severe emotional distress. The actions taken by Defendant were done with malice, were done wantonly, recklessly, and willfully, and were done with desire to harm Plaintiff.

86.

Defendant's conduct was continuous and caused Plaintiff continuous damage. The above conduct illustrates Defendant's intentional infliction of emotional distress. It was foreseeable that such conduct would lead to severe, permanent, and debilitating injuries of Plaintiff's reputation, privacy, and employment. As a direct and proximate result of Defendant's intentional infliction of emotional distress, Plaintiff has suffered, and will continue to suffer emotional distress and mental suffering, loss of past, present, and future wages, humiliation, embarrassment, loss of reputation, loss of social standing, loss of enjoyment of life, loss of consortium, and economic loss as alleged

Case 3:22-cv-00347-SDD-SDJ   Document 1-2  05/27/22  Page 16 of 21

16                           ⌣                        ⌐

herein. Plaintiff also has an increased risk of actual or imminent harm to her physical safety, money, privacy
interest, and property.

87.

## ELEVENTH CAUSE OF ACTION

### (Negligent Infliction of Emotional Distress)

Plaintiff re-alleges and incorporates by reference of the preceding allegations as though fully set forth hereafter.
Defendant had the duty to protect Plaintiff personal information from authorized access, destruction, use,
modification, and disclosure. Defendant failed to conform its conduct to the appropriate standard by its willful
neglect to verify the identity of the person who applied for credit in Plaintiff's name before making the credit
available for use. Defendant's substandard conduct was a cause-in-fact of Plaintiff's duties. Defendant's substandard
conduct is legal cause of Plaintiff's injuries which resulted in actual damages. Defendant's conduct was so flawed
as to constitute at least negligence.

88.

Defendant's conduct was continuous and caused Plaintiff continuous damage. The above conduct illustrates
Defendant's negligent infliction of emotional distress. It was foreseeable that such conduct would lead to severe,
permanent, and debilitating injuries of Plaintiff's reputation, privacy, and employment. As a direct and proximate
result of Defendant's intentional infliction of emotional distress, Plaintiff has suffered, and will continue to suffer
emotional distress and mental suffering, loss of past, present, and future wages, humiliation, embarrassment, loss
of reputation, loss of social standing, loss of enjoyment of life, loss of consortium, and economic loss as alleged
herein. Plaintiff also has an increased risk of actual or imminent harm to her physical safety, money, privacy
interest, and property.

89.

## TWELFTH CAUSE OF ACTION

### (TCPA)

Plaintiff re-alleges and incorporates by reference of the preceding allegations as though fully set forth hereafter.
From 2016 to 2017, Defendant knowingly used an automatic telephone dialer system to make at least 200 harassing
phone calls to Plaintiff and send over 70 text messages without her prior consent seeking to collect on a debt that she
did not owe. When Plaintiff answered the phone calls and/or checked her voicemail, the automatic telephone dialer
system made the usual disclosure indicating "this is an attempt to collect a debt". Defendant knew or should have
known that Plaintiff did not give her consent, but took no action to stop those phone calls after receiving notice that
the Account was open as a result of fraud. The actions taken by Defendant were done with malice, were done
wantonly, recklessly, and willfully, and were done with desire to harm Plaintiff.

90.

Defendant's conduct was continuous and caused Plaintiff continuous damage. The above conduct illustrates
Defendant's TCPA violations. It was foreseeable that such conduct would lead to severe, permanent, and
debilitating injuries of Plaintiff's reputation, privacy, and employment. As a direct and proximate result of
Defendant's TCPA violations, Plaintiff has suffered, and will continue to suffer emotional distress and mental

Case 3:22-cv-00347-SDD-SDJ    Document 1-2    05/27/22    Page 17 of 21

17

suffering, loss of past, present, and future wages, humiliation, embarrassment, loss of reputation, loss of social standing, loss of enjoyment of life, loss of consortium, and economic loss as alleged herein. Plaintiff also has an increased risk of actual or imminent harm to her physical safety, money, privacy interest, and property.

91.

### THIRTEENTH CAUSE OF ACTION

#### (Fraud by Misrepresentation or Silence under Article 1953)

Plaintiff re-alleges and incorporates by reference of the preceding allegations as though fully set forth hereafter. Defendant had the duty to disclose the truth to Plaintiff regarding the status and findings of her consumer fraud claims. Defendant knowingly made material misrepresentations to Plaintiff by indicating that it had right to engage in collection efforts due to payments being made on the Accounts. Defendant refused to provide Plaintiff with copies of the Records when she requested them and made its misrepresentations with the intent to obtain an unjust advantage over her. The actions taken by Defendant were done with malice, were done wantonly, recklessly, and willfully, and were done with desire to harm Plaintiff.

92.

Defendant's conduct was continuous and caused Plaintiff continuous damage. The above conduct illustrates Defendant's fraud by misrepresentation and silence. It was foreseeable that such conduct would lead to severe, permanent, and debilitating injuries of Plaintiff's reputation, privacy, and employment. As a direct and proximate result of Defendant's fraud by misrepresentation and silence, Plaintiff has suffered, and will continue to suffer emotional distress and mental suffering, loss of past, present, and future wages, humiliation, embarrassment, loss of reputation, loss of social standing, loss of enjoyment of life, loss of consortium, and economic loss as alleged herein. Plaintiff also has an increased risk of actual or imminent harm to her physical safety, money, privacy interest, and property.

93.

### FOURTEENTH CAUSE OF ACTION

#### (La. R.S. 9:3568(D) under Consumer Credit Law)

Plaintiff re-alleges and incorporates by reference of the preceding allegations as though fully set forth hereafter. Defendant had the duty to disclose the Records to Plaintiff upon her requests La. R.S. 9:3568(B). Plaintiff requested those Records at least 15 times and furnished copies of driver's license, social security card, written statements, and an Identity Theft Report. Defendant refused to meet that duty with the intent to obtain an unjust advantage over her. The actions taken by Defendant were done with malice, were done wantonly, recklessly, and willfully, and were done with desire to harm Plaintiff.

94.

Defendant's conduct was continuous and caused Plaintiff continuous damage. The above conduct illustrates Defendant's violation to R.S. 9:3568(B). It was foreseeable that such conduct would lead to severe, permanent, and debilitating injuries of Plaintiff's reputation, privacy, and employment. As a direct and proximate result of Defendant's violation to R.S. 9:3568(B), Plaintiff has suffered, and will continue to suffer emotional distress and mental suffering, loss of past, present, and future wages, humiliation, embarrassment, loss of reputation, loss of

social standing, loss of enjoyment of life, loss of consortium, and economic loss as alleged herein. Plaintiff also has an increased risk of actual or imminent harm to her physical safety, money, privacy interest, and property.

95.

## FIFTEENTH CAUSE OF ACTION

### (Breach of Contract)

Plaintiff re-alleges and incorporates by reference of the preceding allegations as though fully set forth hereafter. In June 2019, the parties entered into an oral contract. Defendant offered to close the Accounts and delete the false representations in exchange for Plaintiff's written complaints, copy of her social security card, and copy of her driver's license. When the parties orally discussed the terms of that contract, Defendant knew that its performance was time-sensitive, but Defendant has still not performed on that contract which has exposed Plaintiff to further breach of her privacy and security and ultimately caused the termination of her employment. The actions taken by Defendant were done with malice, were done wantonly, recklessly, and willfully, and were done with desire to harm Plaintiff.

96.

Defendant's conduct was continuous and caused Plaintiff continuous damage. The above conduct illustrates Defendant's fraudulent conduct It was foreseeable that such conduct would lead to severe, permanent, and debilitating injuries of Plaintiff's reputation, privacy, and employment. As a direct and proximate result of Defendant's fraudulent conduct, Plaintiff has suffered, and will continue to suffer emotional distress and mental suffering, loss of past, present, and future wages, humiliation, embarrassment, loss of reputation, loss of social standing, loss of enjoyment of life, loss of consortium, and economic loss as alleged herein. Plaintiff also has an increased risk of actual or imminent harm to her physical safety, money, privacy interest, and property.

97.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court find in Plaintiff's favor against Defendant, and that the Court enter a judgment for the following relief:

   a.  Actual, statutory, special, and successive damages for each claim asserted;

   b.  Treble damages and civil penalties for intentional violations for each applicable claim asserted;

   c.  Attorney's fees, litigation expenses and costs of suit;

   d.  Prejudgment and post-judgment interests;

   e.  Equitable relief including a permanent injunction, protective order, declaratory relief, and estoppel;

   f.  Such other or further relief as the Court deems proper.

## VERIFICATION

I hereby certify under penalty of perjury that all allegations are true and correct to the best of my knowledge and are being presented in good faith and not for an improper purpose.

## CERTIFICATE OF SERVICE

I hereby certify that the receptionist of CSC, Mel Hardin, orally confirmed that CSC is authorized to accept service of process on Defendant's behalf December 1, 2020 at 11:41am. I have mailed a copy of this Petition for Damages and Other Relief to Defendant's registered agent and Requests for Admissions at the address shown below on December 1, 2021.

Corporation Service Company (CSC)
501 Louisiana Ave
Baton Rouge, LA 70802

Respectfully Submitted.

*Monique Montgomery*

Plaintiff, Monique Montgomery
4636 Alvin Dark Ave Apt 1
Baton Rouge, LA 70820

Please Serve:

Capital One Bank (USA), N.A.
through its registered agent for service:
Corporation Service Company (CSC)
501 Louisiana Ave
Baton Rouge, LA 70802

FILED
BATON ROUGE CITY COURT
2021 DEC -1  PM 4: 36

DEPUTY CLERK

## BATON ROUGE CITY COURT FOR THE PARISH OF EAST BATON ROUGE

### STATE OF LOUISIANA

NO. 21-00709                                                                              DIV. E

### MONIQUE MONTGOMERY

VS.

### CAPITAL ONE BANK (USA), N.A.

FILED: _____                              DEPUTY CLERK: _____

### STATEMENT OF CLAIMS

The plaintiff claims the following from the defendant: (1) false light, (2) fraudulent inaction, (3) intentional misrepresentation, (4) abusive debt collection practices, (5) abuse of right, (6) extortion, (7) LUTPA, (8) R.S. 9:3518.2(D): (9) defamation, (10) intentional infliction of emotional distress, (11) negligent infliction of emotional distress, (12) TCPA, (13) fraud by misrepresentation and silence, (14) R.S. 9:3568(D); and (15) breach of contract.

AMOUNT OF CLAIMS REQUESTED __$35,000__ PLUS COSTS AND INTEREST.

*Monique Montgomery*

Monique Montgomery
4636 Alvin Dark Ave Apt 1
Baton Rouge, LA 70820
December 21, 2020

FILED
BATON ROUGE CITY COURT

2021 DEC - 1  PM 4: 35

DEPUTY CLERK

BATON ROUGE CITY COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

NO. 21-00709                                                                    DIV. E

MONIQUE MONTGOMERY

VS.

CAPITAL ONE BANK (USA), N.A.

FILED: _____                              DEPUTY CLERK: _____

### SUMMONS

A lawsuit has been filed against you.

Within in 10 days after service of this summons on you, you must serve on the plaintiff an answer to the

attached petition or a motion. The answer or motion must be served on the plaintiff whose name and address is

Monique Montgomery
4636 Alvin Dark Ave Apt 1
Baton Rouge, La 70820

If you fail to respond, judgment by default will be entered against you for the relief demanded in the

petition. You also must file your answer or motion in the court.


_____                                      _____
Clerk of Court                                                              Date


**Please serve:**

**Capital One Bank (USA), N.A.**
**through its registered agent for service:**
**Corporation Service Company (CSC)**
**501 Louisiana Ave**
**Baton Rouge, LA 70802**