# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**MONIQUE MONTGOMERY**                                    **CIVIL ACTION**

**VERSUS**

**NO. 22-347-SDD-SDJ**

**CAPITAL ONE BANK (USA), N.A.**


Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on March 14, 2023.

_____

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

MONIQUE MONTGOMERY                                    CIVIL ACTION

VERSUS
                                                     NO. 22-347-SDD-SDJ
CAPITAL ONE BANK (USA), N.A.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is a Motion to Dismiss (R. Doc. 7) filed by Defendant Capital One Bank (USA), N.A., on July 25, 2022. Plaintiff Monique Montgomery, who is proceeding *pro se* in this litigation, has not filed a response, and the deadline for doing so has long passed. For the reasons set forth below, it is recommended that Defendants' Motion to Dismiss (R. Doc. 7) be **granted in part** and **denied in part**.

## I.    BACKGROUND AND PROCEDURAL HISTORY

This is a civil action involving claims for damages allegedly sustained by Plaintiff when her personal identifying information was stolen and used to open "multiple financial accounts in her name … without her knowledge or authorization."[1]  According to Plaintiff, "[a]mong the accounts [she] learned of was two Capital One Bank Visa branded credit cards and an auto loan … issued and mailed by Defendant to an imposter at an address of which Plaintiff did not live."[2] She further alleges that she "never applied for the credit, used or possessed the credit, goods, services, money, or property obtained by the identity theft and she has never made any payments."[3]

---

[1] R. Doc. 1-2 at 2 ¶ 7.
[2] *Id.*
[3] *Id.*

Plaintiff claims she sent both written complaints, beginning in January of 2016, as well as Cease and Desist notices to Defendant, but that "Defendant has refused to cooperate."[4]

As further alleged by Plaintiff, in June 2019, "Defendant made verbal representations to Plaintiff demanding that she attach copies of her driver's license and social security card to her written complaint," which, per Defendant, were required to close the allegedly-fraudulent accounts and delete them from the Credit Reporting Agencies.[5]  Plaintiff claims, however, that the accounts were never closed or deleted from the CRAs.[6]  Further, "[f]rom June 2019 to present, all of Plaintiff's disputes were denied without explanation and with the intent to coerce undue payments from her."[7]  Plaintiff also has received multiple phone calls from Defendant attempting to collect payment for the past due accounts.[8]  Subsequently, on July 29, 2019, Defendant announced that its information had been accessed without authorization by an outside individual, which data breach included personal and financial information from Defendant's clients, allegedly including Plaintiff's.[9]

On or about December 1, 2021, Plaintiff filed a Petition for Civil Damages against Capital One in Baton Rouge City Court.[10]  In her Petition, Plaintiff brings fifteen separate causes of action against Capital One.  Capital One subsequently removed the matter to this Court on May 27, 2022, asserting federal question jurisdiction under 28 U.S.C. § 1331, based on Plaintiff's claim under the Telephone Consumer Protection Act, a federal statute.[11]

---

[4] *Id.* ¶ 8.
[5] *Id.* at ¶ 12.
[6] *Id.* at 3 ¶ 13
[7] *Id.* ¶ 14.
[8] *Id.* ¶ 17
[9] *Id.* at 3-4 ¶¶ 18-19.
[10] R. Doc. 1-2.
[11] R. Doc. 1 at 2-3.

On June 29, 2022, this Court received a Conditional Transfer Order from the U.S. Judicial Panel on Multidistrict Litigation, notifying the Court that multiple civil actions involving the Capital One data breach had been transferred to the Eastern District of Virginia "for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407."[12]  The Conditional Transfer order specifies that it only applies to Plaintiff's cause of action number seven—"La. R.S. 51:1409 under LUTPA", as categorized by Plaintiff—and that all other causes of action by Plaintiff "are separated and simultaneously remanded to the Middle District of Louisiana."[13]  This Conditional Transfer Order subsequently was filed with the Office of the Clerk of the U.S. District Court for the Eastern District of Virginia, and on December 27, 2022, Plaintiff's claim related to the Capital One data breach, *i.e.*, cause of action number seven, was transferred to the Eastern District of Virginia.[14]

On July 25, 2022, following the Conditional Transfer Order but before Plaintiff's data breach claim was actually transferred, Capital One filed the instant Motion to Dismiss, seeking dismissal of Plaintiff's claims pursuant to Federal Rules of Civil Procedure 8(a), 9(b), 10, and 12(b)(6) or, in the alternative, seeks a more definite statement by Plaintiff pursuant to Federal Rule of Civil Procedure 12(e).[15]  As stated above, Plaintiff has not filed a response or opposition to Capital One's Motion to Dismiss, and the deadline for doing so has long passed.

## II.    LEGAL STANDARD

In its Motion to Dismiss, Defendant seeks dismissal of Plaintiff's claims "for violating Rules 8(a), 9(b), and 10, and for failure to state a claim under Rule 12(b)(6)."[16]  Federal Rule of

---

[12] R. Doc. 6 at 1.
[13] *Id.*; R. Doc. 1-2 at 14.
[14] R. Docs. 8, 10-11.
[15] R. Doc. 7-1 at 18.
[16] *Id.*

Civil Procedure 12(b)(6) allows for a motion to dismiss based on a party's "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a Rule 12(b)(6) motion, a pleading's language must, on its face, demonstrate that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In determining whether it is plausible that a pleader is entitled to relief, a court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Twombly*, 550 U.S. at 557. Factual assertions are presumed to be true, but "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678. Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). Thus, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

"A liberal reading of plaintiff's pleadings is the only special treatment afforded *pro se* plaintiffs by the courts." *Kiper v. Ascension Parish Sch. Bd.*, No. 14-313, 2015 WL 2451998, at *1 (M.D. La. May 21, 2015) (citing *Callahan v. C.I.R.*, No. 99-0295, 2000 WL 1141607, at *1 (M.D. La. Apr. 10, 2000)). A "court is not required to search for or try to create causes of actions or find material issues of fact for *pro se* plaintiffs." *Id.* Indeed, "a *pro se* litigant is not

'exempt…from compliance with the relevant rules of procedural and substantive law.'" *NCO Fin. Sys., Inc. v. Harper–Horsley*, No. 07–4247, 2008 WL 2277843, at *3 (E.D. La. May 29, 2008) *quoting Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981). A *pro se* litigant is not entitled to greater rights than would be a litigant represented by a lawyer." *Id*. (citing *Birl*, 660 F.2d at 593).

## III. ANALYSIS

In her Petition, Plaintiff brings a combination of federal and state law claims, over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). The fifteen causes of action brought by Plaintiff are: (1) false light, (2) fraudulent inaction, (3) intentional misrepresentation, (4) abusive debt collection practices, (5) abuse of right, (6) extortion, (7) La. R.S. 51:1409 under LUTPA (transferred to the Eastern District of Virginia), (8) La. R.S. 9:3518.2(D) under Consumer Credit Law, (9) defamation, (10) intentional infliction of emotional distress, (11) negligent infliction of emotional distress, (12) TCPA, (13) fraud by misrepresentation or silence under Article 1953, (14) La. R.S. 9:3568(D) under Consumer Credit Law, and (15) breach of contract. However, before the Court can address any of Plaintiff's claims, it must first determine whether it has subject matter jurisdiction over this matter

### A. Subject Matter Jurisdiction

"[T]he court has an obligation to raise subject matter jurisdiction *sua sponte* when the propriety of removal of a claim is in question." *Wilson v. RaceTrac Petroleum, Inc.*, No. 11-686, 2012 WL 528132, at *2 (M.D. La. Jan. 23, 2012); *see also Carter v. Atwood*, 18 F.4th 494, 497 (5th Cir. 2021) ("*sua sponte* dismissal is mandatory when a court discovers that it lacks subject-matter jurisdiction"); *Burciaga v. Deutsche Bank Nat'l Trust Co.*, 871 F.3d 380, 384 n.4 (5th Cir. 2017) ("this court is duty-bound to examine its subject-matter jurisdiction sua sponte"). "A federal court must presume that an action lies outside its limited jurisdiction, and the burden of establishing

that the court has subject matter jurisdiction to entertain an action rests with the party asserting jurisdiction." *Wiggins v. La. State Univ.-Health Care Servs. Div.*, No. 19-731, 2019 WL 6887183, at *2 (M.D. La. Nov. 25, 2019) (citation omitted).

Here, Defendant does not address the issue of subject matter jurisdiction in its Motion to Dismiss or Notice of Removal. However, a recent decision by the U.S. Supreme Court, *Barr v. American Association of Political Consultants, Inc.*, 140 S.Ct. 2335 (2020), raises the question of the constitutionality of the TCPA as applicable to this action. As the TCPA is the only federal statute at issue here, and the basis for this Court's federal question jurisdiction over this case, the Court must first determine whether it has jurisdiction over this matter in light of the Supreme Court's ruling in *Barr*, also known as *AAPC*.

In *Barr*, the Supreme Court addressed the constitutionality of the government-debt exception to the general robocall restriction established in the TCPA. As amended in 2015, the TCPA provided:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
>> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>>
>> * * * *
>>
>>> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States….

47 U.S.C. § 227(b)(1)(A)(iii). In a plurality opinion, the Court held that the government-debt exception was an unconstitutional, content-based restriction on speech. *Barr*, 140 S.Ct. at 2347.

As a remedy, the Court severed the government-debt exception, leaving the remainder of Section 227(b)(1)(A)(iii) intact, *i.e.*, as it was prior to the 2015 amendment. *Id.* at 2349.

Since this ruling, courts have wrestled with and disputed the question of whether federal subject matter jurisdiction exists over claims under the TCPA arising from actions that occurred during the five-year period from when the TCPA was amended in 2015 to add the government-debt exception to when the unconstitutional government-debt exception was severed in 2020. The question, which the *Barr* court did not address, is whether the severance was retroactive or, alternatively, whether the robocall restriction is an enforceable statute for calls made between 2015 and 2022, during which time said statute included the government-debt exception.

Some courts, including courts in this Circuit, have found that, because the government-debt exception was unconstitutional, it rendered that entire provision of the TCPA unconstitutional during the period of time the exception existed. *See, e.g., Cunningham v. Matrix Fin. Servs., LLC*, 531 F.Supp.3d 1164, 1180-81 (E.D. Tex. 2021) ("the necessary conclusion is that § 227(b)(1)(A)(iii) was unconstitutional from the moment Congress enacted the government-debt exception until the Supreme Court handed down its decision in *AAPC*," meaning "during that stretch of time, § 227(b)(1)(A)(iii) had no legal effect"); *Creasy v. Charter Commc'ns, Inc.*, 489 F.Supp.3d 499, 507, 508 (E.D. La. 2020) (finding that "the *entirety* of the pre-severance version of § 227(b)(1)(A)(iii) *is* void because it *itself* was repugnant to the Constitution before the Supreme Court restored it to constitutional health in <u>AAPC</u>" and holding that because the unconstitutional amended version of § 227(b)(1)(A)(iii) applied to the defendant at the time of the communications at issue, "that fact deprives the Court of subject matter jurisdiction to adjudicate [defendant's] liability with regard to such communications").

However, the Court finds more persuasive the reasoning of the majority of courts that have addressed this issue, which is that it does have subject matter jurisdiction over Plaintiff's TCPA claim, the actions underlying which occurred during the time the government-debt exception was in effect.[17]  In *Cano v. Assured Auto Group*, the Northern District of Texas found that in *Barr*, the Supreme Court "did not *cure* anything," instead finding the government-debt exception "'is not law at all,' because '[t]he Court's authority on this front amounts to little more than the negative power to disregard an unconstitutional enactment.'"  *Cano v. Assured Auto Group*, No. 20-3501, 2021 WL 3036933, at *6 (N.D. Tex. Jul. 19, 2021), quoting *Barr*, 140 S.Ct. at 2351 n.8 (internal quotations omitted).  It further noted that the opposing position "would re-make the government-debt exception into an existing—but unconstitutional—provision until the Court re-wrote the statute to excise it," which "aggrandizes the power of the federal courts beyond what the Constitution permits."  *Id.*

The *Cano* court continued, agreeing with the Supreme Court's application of the "*Frost*" framework in *Barr* and finding that an unconstitutional statutory amendment "'is a nullity' and 'void' when enacted," meaning it "has no effect on the original statute."[18]  *Id.* at *8, quoting *Barr*, 140 S.Ct. at 2353.  Thus, "in *AAPC*, the court held that the *law* is Section 227(b)(1)(A)(iii) without the government-debt exception.  *Id.* at *9, citing *Barr*, 140 S.Ct. at 2356.  The *Cano* court then concluded that "this interpretation of Section 227(b)(1)(A)(iii) applies retroactively to cover the defendants' alleged conduct is consistent with the constitutional powers of the federal courts, principles of statutory interpretation, and the mandatory authority of *AAPC* and *Frost*," and that

---

[17] As alleged by Plaintiff in her Petition, she received the calls and text messages in question "[f]rom 2016 to 2017." R. Doc. 1-2 at 16 ¶ 89.
[18] The *Cano* court is referencing *Frost v. Corp. Comm'n of Okla*, 278 U.S. 515 (1929).

the court, therefore, had subject matter jurisdiction to hear the plaintiff's TCPA claim. *Id.* The Court finds this reasoning persuasive.

Other courts also have adopted this, or similar, reasoning. *See Williamson v. Irving K Motor Co.*, No. 21-1599, 2022 WL 2053179, at **4, 6 (N.D. Tex. Jun. 7, 2022) (noting that "[j]urisdiction arises not from the provision declared unconstitutional in *AAPC*, however, but from the private cause of action in section 227(b)(3) that grants Plaintiff standing to bring her claims" and finding that "[w]hen, as here, a defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper procedure for the district court is to find that jurisdiction exists and to deal with the objection as a direct attack on the merits of the plaintiff's case") (internal quotations and modifications omitted); *Thomas v. Life Protect 24/7 Inc.*, 559 F.Supp.3d 554, 565 (S.D. Tex. 2021) ("Nothing disturbs the overall presumption in favor of the TCPA's constitutionality" and "[t]hat the exception was also found to be severable further confirms that its unconstitutional nature didn't infect the constitutionality of the remainder of the TCPA—all of which was language enacted on a stand-alone basis well prior to the exception."); *Callier v. Multiplan, Inc.*, No. 20-318, 2021 WL 8053527, at *13 (W.D. Tex. Aug. 26, 2021) (finding subject matter jurisdiction over robocalls predating *Barr*, explaining that "the appropriate remedy for the conferral of an unconstitutional benefit is for the government to be denied this exception, rather than raze a whole statute and deny the TCPA's protection to all individuals"); *Poonja v. Kelly Servs., Inc.*, No. 20-4388, 2021 WL 4459526 (N.D. Ill. Sep. 29, 2021) (finding the court had subject matter jurisdiction over a TCPA claim post-*Barr* and denying defendant's motion to dismiss pursuant to Rule 12(b)(1)).

Following the majority of courts in (and out) of this Circuit, the Court finds that it has subject matter jurisdiction over Plaintiff's TCPA claim.  The Court, therefore, has federal question jurisdiction over this case and now turns to Plaintiff's claims themselves.

**B.    Plaintiff's Claims**

The Court first addresses Plaintiff's TCPA claim before turning to Plaintiff's myriad state law claims, all of which are addressed, in turn, below.

**1.    Plaintiff's Claim Under the Telephone Consumer Protection Act**

In her Petition, Plaintiff, in part, alleges that Defendant violated the TCPA (Claim 12) as follows:

> From 2016 to 2017, Defendant knowingly used an automatic telephone dialer system to make at least 200 harassing phone calls to Plaintiff and send over 70 text messages without her prior consent seeking to collect on a debt that she did not owe.  When Plaintiff answered the phone calls and/or checked her voicemail, the automatic telephone dialer system made the usual disclosure indicating "this is an attempt to collect a debt."[19]

"The TCPA aims to protect individual privacy by regulating certain undesirable telemarketing practices, including the use of unsolicited, automated phone calls." *Saragusa v. Countrywide*, No. 14-2717, 2016 WL 1059004, at *3 (E.D. La. Mar. 17, 2016).  "[T]o state a claim for violation of the TCPA, a plaintiff must provide sufficient support of the following elements: (1) a call was made to a cell or wireless phone, (2) by the use of an automatic dialing system <u>or</u> an artificial or prerecorded voice, and (3) without prior express consent of the called party." *Adams v. Ocwen Loan Servicing, LLC*, 366 F.Supp.3d 1350, 1353-54 (S.D. Fla. 2018) (internal quotations and citation omitted).

Here, the Court finds that Plaintiff has failed to sufficiently allege all elements of a TCPA claim.  In conclusory fashion, Plaintiff alleges that an automatic telephone dialer system was used

---

[19] R. Doc. 1-2 at 16 ¶ 89.

to place calls and texts to her. While she does claim that the calls contained a disclosure indicating "this is an attempt to collect a debt," she does not allege that the voice was an artificial or prerecorded voice or provide any other indication that an ATDS was used, as required by the TCPA. *See* 47 U.S.C. § 227(b)(1)(A); *Saragusa*, 2016 WL 1059004, at *4 ("mere recitation of the elements of a cause of action [under the TCPA] is insufficient to plausibly state a claim for relief."). Moreover, elsewhere in her Petition, Plaintiff alleges that she "received collection phone calls from Defendant's place of business stating that the Accounts were past due," but that she "orally disputed the Accounts and requested that they stop making collections efforts."[20] To the Court, this allegation indicates that Plaintiff spoke with actual people during these calls, calling into question whether a prerecorded voice was used.

Plaintiff also has failed to indicate that an ATDS was used to place the calls and texts she received. To qualify as an ATDS, "a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Hunsinger v. Alpha Cash Buyers, LLC*, No. 21-1598, 2021 WL 5040228, at *3 (N.D. Tex, Oct. 29, 2021), quoting *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163, 1168 (2021). "Thus to establish a claim under § 227(b), 'the equipment in question must use a random or sequential number generator,' not merely auto-dial stored numbers." *Id.*, quoting *Facebook*, 141 S.Ct. at 1170. Recognizing the difficulty a plaintiff faces in knowing the type of calling system used without the benefit of discovery, courts have "allowed plaintiffs to rely on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages to raise an inference that an ATDS was used." *Id.* (internal quotations and citation omitted). Plaintiff has made no such allegations. "Simply alleging the use

---

[20] *Id.* at 3 ¶ 17.

of an ATDS, without more, is insufficient to sustain a TCPA claim." *Id.*, quoting *Cunningham v. Nationwide Sec. Sols., Inc.*, No. 17-337, 2017 WL 10486988, at *3 (N.D. Tex. Nov. 2, 2017) (internal modification omitted).

Here, as Plaintiff has failed to sufficiently allege that either an artificial or prerecorded voice or an ATDS was used to place the calls or texts she allegedly received from Defendant, Plaintiff has failed to state a cause of action under the TCPA.[21]   Defendant's Motion to Dismiss should be granted as to this claim, pursuant to Rule 12(b)(6).

## 2.    Plaintiff's Claims Based on Fraud

Turning now to Plaintiff's myriad state law claims, Plaintiff brings several causes of action based on fraud, including "fraudulent inaction" (Claim 2), "intentional misrepresentation"[22] (Claim 3), and "fraud by misrepresentation or silence under article 1953" (Claim 13).  As no specific federal statute is identified, and because there is no general claim for fraud in federal law, the Court looks to state law for guidance.  According to article 1953 of the Louisiana Civil Code, "[f]raud is a misrepresentation or suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other" and continues that "[f]raud may also result from silence or inaction.  La. C.C. art. 1953; *see also Shehmohmad v. Ebrahimi*, 06-512 (La. App. 5 Cir. 10/31/06), 945 So.2d 119, 121-122 (citing La. C.C. art. 1953). "The requisite elements of a fraud claim are: (1) a misstatement or omission; (2) of material fact; (3) made with the intent to defraud; (4) on which the plaintiff relied; and (5) which proximately

---

[21] The Court notes that Plaintiff does not specify in her Petition whether the calls were received on her "land line" or on her cell phone.  Because Plaintiff also alleges texts were received, the Court assumes she received said calls on her cell phone, but again, this is not clear.  However, 47 U.S.C. § 227(b)(1)(B) makes it illegal "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without prior express consent of the called party…"  Thus, even if the calls were made to Plaintiff's residential phone line, she still fails to sufficiently state a claim for relief under the TCPA because she fails to allege that an artificial or prerecorded voice was used, as detailed above.

[22] Intentional misrepresentation is also known as delictual fraud in Louisiana.  *See Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 627 (5th Cir. 1999).

caused the plaintiff's injury." *Medve Energy Ventures LLC v. Warhorse Oil & Gas LLC*, No. 17-1336, 2018 WL 4089456, at *4 (W.D. La. Aug. 27, 2018) (internal quotations and citation omitted). "Federal Rule of Civil Procedure 9(b) requires that all claims of fraud be pled with particularity, including time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* (citation and internal quotations omitted). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010), quoting *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003). A plaintiff may plead fraud based upon information and belief, as long as the complaint sets forth a factual basis for that belief, but this allowance "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Medve Energy Ventures*, 2018 WL 4089456, at *4.

Plaintiff's claims fail either to meet this heightened pleading standard for claims based on fraud or to allege the requisite elements of a fraud claim. In alleging fraudulent inaction, Plaintiff claims that "Defendant intentionally breached its lawful duty to take reasonable measures to implement and maintain procedures and practices to protect Plaintiff's personal information from misuse after receiving reports of fraud."[23] Plaintiff further alleges that "Defendant knew or should have known that Plaintiff's personal information was being misused by the imposter but Defendant allowed the Account to remain open against Plaintiff's wishes."[24] These allegations, however, do not include any of the requisite specifics, such as the time and place of the alleged omissions or the identity of the person responsible for the alleged omissions.

---

[23] R. Doc. 1-2 at 12 ¶ 69.
[24] *Id.*

Similarly, in alleging intentional misrepresentation, Plaintiff claims that "Defendant intentionally made material misrepresentations that deceptively induced Plaintiff to send copies of her driver's license and social security card" and that said "misrepresentations were intended to obtain the unjust advantage of substantiating its illegal collection efforts on a nonexistent debt."[25] Once again, the time and place of the alleged misrepresentations, the contents of the false representations, and the identity of the person who made the alleged misrepresentations are not alleged. These allegations are not sufficient to satisfy the requirements of Rule 9.

Plaintiff's third claim is for fraud by misrepresentation or silence under Article 1953. As alleged by Plaintiff, "Defendant had the duty to disclose the truth to Plaintiff regarding the status and finding of her consumer fraud claims," but instead "Defendant knowingly made material misrepresentations to Plaintiff by indicating that it had right [sic] to engage in collection efforts due to payments being made on the Accounts."[26] Plaintiff also alleges that "Defendant refused to provide Plaintiff with copies of the Records when she requested them and made its misrepresentations with the intent to obtain an unjust advantage over her."[27] Here, again, Plaintiff has failed to allege not only the time, place, and contents of the alleged misrepresentations, but also the identity of the individual or individuals associated with Defendant who made said misrepresentations. This claim, too, fails to meet the pleading requirements of Rule 9.

In addition to not satisfying the specific pleading requirements for claims of fraud, Plaintiff also fails to allege all requirements for a fraud claim. Specifically, Plaintiff fails to allege that any of the supposed actions taken by Defendant, a bank, were done with the intent to defraud Plaintiff.

---

[25] *Id.* ¶ 71.

[26] *Id.* at 17 ¶ 91.

[27] *Id.*

Plaintiff's claims based on fraud, therefore, fail to state a claim on which relief can be granted, and should be dismissed pursuant to Rule 12(b)(6).

### 3.    False Light

Plaintiff brings a cause of action against Defendant for "false light" (Claim 1).  As alleged by Plaintiff in her Petition, "Defendant acted in reckless disregard by furnishing false and embarrassing representations about Plaintiff's integrity to CRAs by asserting that she has a negative history of failing to pay her debts."[28]  She continues, "[t]hese false light representations are highly offensive to any reasonable person of ordinary sensibilities who are seeking to benefit from their credit history because it substantially lowered Plaintiff's credit rating and deterred her employer, potential employers, insurance carriers, and potential lenders from dealing with her."[29]

"Louisiana law … recognizes a cause of action for 'false light' invasion of privacy."  *Cook v. Warrier Energy Servs., Corp.*, No. 15-2195, 2017 WL 1356333, at *6 (W.D. La. Apr. 11, 2017), citing *Perere v. La. Television Broad. Corp.*, 97-2873 (La. App. 1 Cir. 11/6/98), 721 So.2d 1075, 1078.  As further explained:

> The cause of action arises from publicity which unreasonably places the plaintiff in a false light before the public.  The publicity need not be defamatory in nature, but must be objectionable to a reasonable person under the circumstances and must contain either falsity or fiction.  Unlike a defamation action, it is not necessary that there be malicious intent on the part of the defendant.  Instead, in order to determine reasonableness, courts are to balance the plaintiff's interest in protecting his privacy from serious invasions with the defendant's interest in pursuing his course of conduct.

*Id.*, quoting *Perere*, 721 So.2d at 1078 (internal citations omitted); *see also Smith ex rel. C.R.S. v. Tangipahoa Parish Sch. Bd.*, No. 05-6648, 2006 WL 3395938, at *18 (E.D. La. Nov. 22, 2006) ("Under Louisiana law, a cause of action for 'false light' invasion of privacy arises from publicity

---

[28] *Id.* at 11 ¶ 67.
[29] *Id.*

which unreasonably places the plaintiff in a false light before the public.") (internal quotations omitted). "When analyzing a claim for a false light invasion of privacy, the Court considers three elements: privacy interest, falsity, and unreasonable conduct." *Smith ex rel. C.R.S.*, 2006 WL 3395938, at *18, citing *Perere*, 812 So.2d at 676.

Here, Plaintiff does not allege invasion of privacy. Moreover, she alleges only that Defendant furnished false information to CRAs, listed in her Petition as Experian, Equifax, and Transunion.[30] Courts have found that this does not satisfy the publicity and/or dissemination to the public requirement for a false light claim. *See, e.g., Wilson v. Retail Credit Co.*, 325 F.Supp. 460, 467 (S.D. Miss. 1971) ("Finally, the question remains whether a false and libelous credit report can be held to invade plaintiff's right to privacy by placing him in a 'false light in the public eye.' The court holds that, unless it is disseminated to the public, it cannot."). Finally, Plaintiff does not specify the unreasonable conduct by Defendant. She states that Defendant has asserted Plaintiff "has a negative history of failing to pay her debts," but she does not explain how a bank's reporting of delinquency on an account to a CRA, a presumably common practice by banks, constitutes unreasonable conduct on behalf of Defendant. *See Perere*, 812 So.2d at 677 ("Where the defendant's action is properly authorized or justified by circumstances, it is deemed to be reasonable and non-actionable even though it admits to a slight invasion of the plaintiff's privacy."); *see also Spellman v. Discount Zone Gas Station*, 07-496 (La.App. 5 Cir. 12/27/07), 975 So.2d 44, 48 (affirming dismissal of plaintiff's false light claim, in part, because plaintiff failed to disclose the unreasonable conduct taken by defendant). As such, because Plaintiff has failed to state a claim for false light, the Court finds this claim subject to dismissal under Rule 12(b)(6).

---

[30] *Id.* at 2 ¶ 9.

### 4.      Abusive Debt Collection Practices

Plaintiff's next cause of action is for "Abusive Debt Collection Practices" by Defendant (Claim 4).  In stating her claim, Plaintiff alleges that "Defendant is not licensed as a debt collector in this state" but "made repeated efforts to collect on a debt that it knew that Plaintiff did not owe."[31]  Plaintiff, however, fails to specify a statute, regulation, or doctrine that gives rise to this cause of action and which Defendant allegedly violated.  And the Court cannot, and should not, surmise the source of Plaintiff's claim, as it is not the Court's responsibility to search for a cause of action or create one where Plaintiff herself has failed to do so.  *See Berry v. LoanCity*, 489 F.Supp.3d 441, 447 (M.D. La. 2020) (a "court is not required to search for or try to create causes of action or find material issues of fact for *pro se* plaintiffs").

While the Court notes that Plaintiff references La. R.S. 9:3534.1(B) elsewhere in her Petition and alleges violation of said statute, which mandates debt collectors register with the Secretary of State, the Court also is cognizant that Defendant, in its Motion to Dismiss argues that La. R.S. 9:3562 is the applicable statute here.[32]  As previously stated, Rule 8(a)(2) mandates Plaintiff's pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Plaintiff has not done so here, as the Court cannot be certain from the information provided by Plaintiff the basis for this cause of action.  The Court, therefore, finds Plaintiff not only fails to meet the pleading requirements of Rule 8, but also necessarily fails to state a claim upon which relief may be granted, in violation of Rule 12(b)(6).  This claim, too, should be dismissed.

---

[31] *Id.* at 12-13 ¶ 73.
[32] *See id.*, at 1 ¶ 4; R. Doc. 7-1 at 12.

### 5.    Abuse of Right

Louisiana courts have recognized the abuse of right doctrine as "a civilian concept which is applied only in limited circumstances because its application renders unenforceable one's otherwise judicially protected rights." *Mass. Mut. Life Ins. Co. v. Nails*, 539 So. 2d 797, 798 (La. Ct. App.), *writ granted*, 541 So. 2d 880 (La. 1989), and *aff'd*, 549 So. 2d 826 (La. 1989), quoting *Truschinger v. Pak*, 513 So.2d 1151, 1154 (La. 1987).  The abuse of right doctrine applies only when one of the following conditions is met: (1) if the predominant motive for it was to cause harm; (2) if there was no serious or legitimate motive for refusing; (3) if the exercise of the right to refuse is against moral rules, good faith, or elementary fairness; or (4) if the right to refuse is exercised for a purpose other than that for which it is granted.  *Id.*  It is "invoked sparingly in Louisiana" and is based on the principle "that 'fault' in the delictual sense can be imposed upon a party who attempts to exercise a legal right with the primary intention of harming or imposing a detriment upon another." *Insulation Techs., Inc. v. Indus. Lab. & Equip. Servs., Inc.*, 2013-0194 (La. App. 4 Cir. 8/14/13), 122 So. 3d 1146, 1151.  An abuse of right claim "does not arise from a breach of contract, but from the breach of a separate duty imposed by law." *White v. State Farm Mut. Auto. Ins. Co.*, No. 09-991, 2010 WL 4318892, at *3 (M.D. La. Oct. 22, 2010).

With regard to her abuse-of-right claim (Claim 5), Plaintiff alleges that "Defendant has the right to collect and store Sensitive Information upon receipt of credit applications and has the right to request copies of Plaintiff's driver's license and social security card in support of its investigations for identity theft."[33]  She continues, arguing that "Defendant intentionally used those rights with the predominate motive of blackmailing Plaintiff" and that "Defendant's conduct

---

[33] R. Doc. 1-2 at 13 ¶ 75.

violated moral rules, good faith, and elementary fairness."[34]  These allegations are not sufficient to state a cause of action for abuse of right.

Here, Plaintiff fails to identify either a constitutionally- or statutorily-imposed right or duty that Defendant actually had and allegedly abused.  Moreover, she has provided no factual support for her allegation that Defendant, in requesting documents that prove Plaintiff's identity, *i.e.*, her driver's license and social security card—in a situation where Plaintiff has alleged identity theft and in seeking payment of a debt in Plaintiff's name, whether accurate or not—constitutes blackmail.  As previously explained, "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678.  As such, the Court finds Plaintiff has not sufficiently alleged a cause of action for abuse of right, and the Court should dismiss this claim pursuant to Rule 12(b)(6).  *See Curtis v. Kunz-Freed*, No. 16-1969, 2017 WL 7371194, at *2 (S.D. Tex. May 16, 2017) (dismissing the plaintiff's claims, as her "allegations consist entirely of outlandish and conclusory factual assertions accompanied by a formulaic recitation of the elements of numerous causes of action unsupported by the alleged facts").

### 6.    Extortion

Plaintiff's next cause of action against Defendant is for extortion (Claim 6).  As alleged by Plaintiff, "Defendant knowingly communicated a threat of harm to Plaintiff by harassing her via telephone and making defamatory statements about her to others with the intent to coerce payments."[35]  In addition, Plaintiff alleges that "Defendant knew that Plaintiff was desperate to have her credit restored from the damage of identity theft so it availed itself to extortion in an

---

[34] *Id.*
[35] *Id.* at 13 ¶ 77.

illegal attempt to force her to pay the debt against her will."[36]   Extortion, however, is a criminal offense and is not a proper cause of action in a civil proceeding.  *See* La. R.S. 14:66; *La. State Bd. of Nursing v. Gautreaux*, 2009-1758 (La. App. 1 Cir. 6/11/10), 39 So.3d 806, 814 ("The Louisiana Constitution mandates that the 'district attorney, or his designated assistant, shall have charge of every criminal prosecution by the state in his district.'").   The Court, therefore, should grant Defendant's Motion to Dismiss as to this claim.

### 7.    La. R.S. 9:3518.2(D) Under Consumer Credit Law

Part (D) of La. R.S. 9:3518.2 provides that "[i]f any credit card is issued to a person who has not requested or accepted by use the issuance of such credit card, the issuer shall be liable to the person whose name appears on the credit card for any damages and expenses or either, including attorney fees, which the person incurs due to the use of such credit card without permission of the person to whom it is issued."   In alleging a violation of La. R.S. 9:3518.2(D) (Claim 8), Plaintiff claims Defendant mailed or delivered three credit cards "in Plaintiff's name to an imposter without her consent."[37]   Per Plaintiff, she "never requested the credit cards or accepted by use of the credit cards" and that "[u]pon receiving reports that it was opened in Plaintiff's name as a result of identity theft, Defendant took no action to close the Accounts."[38]

In its Motion to Dismiss, Defendant argues only that this is a "negligence-based cause[] of action grounded in the notion that Capital One owed her a duty of care to protect her from identity theft and breached that duty."[39]   Specifically, Defendant argues that it did not owe a duty to Plaintiff, as a non-customer of Capital One.[40]   The plain language of the statute, however, imposes

---

[36] *Id.*
[37] *Id.* at 14 ¶ 81.
[38] *Id.*
[39] R. Doc. 7-1 at 8.
[40] Plaintiff herself states in her Petition that she is a non-customer of Capital One.  *See, e.g.,* R. Doc. 1-2 at 5 ¶ 30, 15 ¶ 83.

liability on an issuer of a credit card.  A financial institution/customer relationship is not referenced as a requirement for liability.  As such, based only on the pleadings, the Court finds Defendant's argument without merit.  Moreover, the Court has found no case law interpreting or applying this statute.  As Plaintiff has alleged that Defendant issued credit cards to someone other than Plaintiff in Plaintiff's name, the Court finds a claim under La. R.S. 9:3518.2(D) has sufficiently been alleged and recommends denial of Defendant's Rule 12(b)(6) Motion as to this claim.

### 8.    Defamation

Defamation is a tort involving the invasion of a person's interest in his or her reputation and good name. *Costello v. Hardy*, 2003-1146 (La. 1/21/04), 864 So. 2d 129, 139.  Four elements are necessary to establish a claim for defamation under Louisiana law: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury.  *Id.* (citation omitted).  "If even one of the required elements of the tort is lacking, the cause of action fails." *Id.*  (citation omitted). "The plaintiff must prove that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused the plaintiff damages."  *St. Germain v. Coulon*, 04-531 (La.App. 5 Cir. 10/26/04), 887 So.2d 608, 611 (citation omitted).  "A plaintiff alleging a cause of action for defamation must set forth in the petition with reasonable specificity the defamatory statements allegedly published by the defendant."  *Id.*, citing *Fitzgerald v. Tucker*, 98-2313 (La. 6/29/99), 737 So.2d 706, 713.

In her Petition (in Claim 9), Plaintiff alleges that "Defendant furnished false representations about Plaintiff to CRAs and others indicating that she had defaulted on credit cards and a loan in the approximate amount of $14,000."[41]  Additionally, Plaintiff alleges that "Defendant knew of

---

[41] R. Doc. 1-2 at 15 ¶ 83.

the falsity but took no action to prevent the false information from remaining on her Consumer Reports."[42]  Per Plaintiff, "Defendant included statements such as [] 'late payments' and 'charge off.'"  She continues that "Defendant has no justifiable motive or qualified privilege because Plaintiff is a non-customer" and that "Defendant's statement concerning Plaintiff were false, publicized, defamatory, actionable by a special showing of harm."[43]  This is not sufficient.

Plaintiff has not set forth "with reasonable specificity" the particular defamatory statements allegedly published by Defendant, as she has claimed only that Defendant used the phrases "late payments" and "charge off" but does not place those words in context or even allege that they were made in relation to her accounts.  Moreover, "'[d]efamatory words' are, by definition, words which tend to harm the reputation of another so as to lower the person in the estimation of the community, to deter others from associating or dealing with the person, or otherwise expose a person to contempt or ridicule."  *St. Germain*, 887 So. 2d at 612, citing *Costello*, 864 So. 2d at 140.  A bank using the words "late payments" and "charge off," as alleged by Plaintiff, does not rise to the level of defamation.  Thus, Plaintiff has not sufficiently alleged the first element of a cause of action for defamation, meaning her claim for defamation necessarily must fail.  As such, Plaintiff's defamation claim should be dismissed under Rule 12(b)(6).

### 9.  Intentional Infliction of Emotional Distress

Plaintiff's next claim against Defendant is for intentional infliction of emotional distress (Claim 10).  "In order to recover damages for intentional infliction of emotional distress, a plaintiff must establish that: (1) the conduct of the defendant was extreme and outrageous, (2) the emotional distress suffered by the plaintiff was severe, and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain

---

[42] *Id.*
[43] *Id.*

to result from his or her conduct." *Quinlan v. Sugar-Gold*, 51,191 (La.App. 2 Cir. 4/5/17), 219 So.3d 1173, 1185, citing *White v. Monsanto Co.*, 585 So.2d 1205 (La. 1991); *Henderson v. Bailey Bark Materials*, 47,946 (La. App. 2 Cir. 4/10/13), 116 So.3d 30. "Conduct is considered extreme and outrageous when it goes 'beyond all possible bounds of decency' and is 'regarded as atrocious and utterly intolerable in a civilized community.'" *Id.*, quoting *White*, 585 So.2d at 1209; *Henderson*, 116 So.3d 30. "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions or other trivialities." *Id.* (citations omitted).

"Liability does not attach where the actor has done no more than to insist upon his legal rights in a permissible way, even though he is aware that such insistence is certain to cause emotional distress." *White*, 585 So.2d at 1210 (citation omitted). Moreover, "[t]he distress suffered must be such that no reasonable person could be expected to endure it." *Id.* And, "[t]he conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like." *Id.*

Here, Plaintiff, aside from essentially alleging the elements of intentional infliction of emotional distress, has failed to state specific facts which, if true, would support a cause of action. Specifically, the facts pled fail to establish that Defendant's conduct was extreme and outrageous. Plaintiff's allegations, in a nutshell, are that Defendant allowed accounts to be improperly opened in Plaintiff's name, attempted to collect on a debt it attributed to Plaintiff, and reported alleged delinquency by Plaintiff to CRAs. The Court does not find that the facts alleged rise to the level of atrocious, utterly intolerable in a civilized community, or beyond all possible bounds of decency. As such, Plaintiff has failed to sufficiently allege the first element of a cause of action for intentional infliction of emotional distress. *See Preis v. Durio*, 94-468 (La.App. 3 Cir. 11/2/94), 649 So.2d 600, 603 (affirming dismissal of claim for intentional infliction of emotional distress,

finding plaintiff failed to plead facts to support the first element of the claim because, accepting the alleged facts as true, the actions "would not be viewed by a civilized community as atrocious and utterly intolerable, nor do they go beyond all possible bounds of decency"). This claim, too, should be dismissed pursuant to Rule 12(b)(6).

### 10.    Negligent Infliction of Emotional Distress

Negligent infliction of emotional distress (Claim 11) is Plaintiff's next cause of action asserted against Defendant. In support of her claim, Plaintiff alleges that "Defendant had the duty to protect Plaintiff [sic] personal information from authorized [sic] access, destruction, use, modification, and disclosure."[44] Per Plaintiff, "Defendant failed to conform its conduct to the appropriate standard by its willful neglect to verify the identity of the person who applied for credit in Plaintiff's name before making the credit available for use."[45] Plaintiff alleges, therefore, that "Defendant's substandard conduct is [sic] legal cause of Plaintiff's injuries which resulted in actual damages."[46]

"Recovery for the negligent infliction of emotional distress is based on Article 2315, which provides, in pertinent part, that '[e]very act whatever of man that causes damages to another obliges him by whose fault it happened to repair it.'" *Walker v. Allen Parish Health Unit*, 97-1007 (La.App. 3 Cir. 4/1/98), 711 So.2d 734, 736. To determine whether a plaintiff is entitled to recover for negligent infliction of emotional distress, courts employ a duty-risk analysis. *Bordelon v. St. Francis Cabrini Hospital,* 93–1331 (La.App. 3 Cir. 5/4/94), 640 So.2d 476, 478. "For liability to attach, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform

---

[44] *Id.* at 16 ¶ 87.
[45] *Id.*
[46] *Id.*

his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element)." *Covington v. Howard*, 49,135 (La.App. 2 Cir. 8/13/14), 146 So.3d 933, 937, citing *Mathieu v. Imperial Toy Corp.*, 94-0952 (La. 11/30/94), 646 So.2d 318. "A negative answer to any of those inquiries results in a determination of no liability." *Id.*, citing *Mathieu*, 646 So.2d at 326.

Louisiana courts have determined that "[t]he correct standard for the recovery of negligent infliction of emotional distress absent physical injury is that the plaintiff must show an 'especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious.'" *Johnson v. Orleans Parish Sch. Bd.*, 2006-1223 (La.App. 4 Cir. 1/30/08), 975 So.2d 698, 711, citing *Moresi v. State Through Dep't of Wildlife & Fisheries*, 567 So.2d 1081, 1096 (La. 1990); *Bonnette v. Conoco, Inc.*, 2001-2767 (La. 1/28/03), 837 So.2d 1219. Plaintiff here has not alleged physical injury. As such, the Court must determine whether mental distress has been adequately pled. Plaintiff, in her Petition, claims that "[a]s a direct and proximate result of Defendant's intentional [sic] infliction of emotional distress, Plaintiff has suffered, and will continue to suffer emotional distress and mental suffering, loss of past, present, and future wages, humiliation, embarrassment, loss of reputation, loss of social standing, loss of enjoyment of life, loss of consortium, and economic loss."[47] She makes this same verbatim allegation for all her causes of action, though, so it is not specific to her claim for negligent infliction of emotional distress. This rote language does not allege what the Court interprets to be "serious mental distress."

---

[47] *Id.* ¶ 88.

Louisiana courts "have limited recovery for NIED to those cases that involved facts where the defendant's conduct was outrageous or deemed outrageous because the defendant breached a special direct duty to the plaintiff and where the resulting mental distress the plaintiff suffered was easily associated with the defendant's conduct." *Covington*, 146 So.3d at 938; *see Simmons v. State*, 2018-0174 (La.App. 4 Cir. 8/29/18), 255 So.3d 701, 705 (noting for a claim of negligent infliction of emotions distress that "plaintiff must meet the heavy burden of proving outrageous conduct by the defendant"); *see also Bordelon*, 640 So.2d 476 (hospital found liable for negligent infliction of emotional distress where it breached an independent direct duty to the plaintiff by negligently giving her someone else's blood after she had made special arrangements with the hospital to receive only her blood and resulting in mental distress arising from fear of contracting the AIDS virus). No such outrageous act by Defendant has been alleged here. And Plaintiff has not alleged that Defendant owed her a special direct duty, particularly as a non-customer of Defendant.[48] The Court, therefore, finds that Plaintiff has not sufficiently alleged the damages element of a claim for negligent infliction of emotional distress, meaning she has failed to state a claim for same. This claim also should be dismissed pursuant to Rule 12(b)(6).

### 11.    La. R.S. 9:3568(D) Under Consumer Credit Law

Plaintiff's next cause of action invokes the Louisiana identity theft statute, specifically provision (D) (Claim 14). According to Plaintiff in her Petition, "Defendant had the duty to disclose the Records to Plaintiff upon her requests La. R.S. 9:3568(B)" and that "Plaintiff requested those Records at least 15 times and furnished copies of driver's license, social security

---

[48] *See* FN 40, *supra*.

card, written statements, and an Identity Theft Report."[49]  Plaintiff further alleges that "Defendant

refused to meet that duty with the intent to obtain an unjust advantage over her."[50]

While Plaintiff titles this cause of action "La. R.S. 9:3568(D) under Consumer Credit

Law," La. R.S. 9:3568(D) is only the damages provision of the identity theft statute, to be invoked

if other provisions of the statute are violated.  As Plaintiff's actual allegations reference and appear

tailored to provision (B) of this statute, the Court will interpret Plaintiff's cause of action as one

under La. R.S. 9:3568(B).

According to La. R.S. 9:3568(B):

(1) Each creditor who grants credit as a result of information which was obtained
through an identity theft shall make available to the victim of the identity theft
application information and transactional information, such as a copy of one or
more complete monthly billing statements prepared in the regular course of
business by a financial institution, in the possession of the creditor which the victim
needs to undo the effects of the identity theft.  Prior to providing information to the
victim, the creditor or its representative may require the victim to submit a written
statement, dated and signed by the victim of identity theft, which (a) provides
information sufficient to verify the identity of the victim and the existence of an
identity crime, including a copy of the police report and a copy of the victim's state-
issued identification card, and (b) states that the consumer authorizes disclosure of
the information, and (c) identifies the information the victim requests to be
disclosed.

(2) No creditor may be held liable for an action taken in good faith to provide
information regarding potential or actual violations of this Part to other financial
information repositories, financial service providers, merchants, law enforcement
authorities, victims, or any person alleging to be a victim who complies with
Paragraph (1) of this Subsection, or to assist a victim in recovery of fines,
restitution, and rehabilitation of the victim's credit, or such other relief as may be
appropriate.

In its Motion to Dismiss, as with Plaintiff's claim pursuant to La. R.S. 9:3518.2(D),

Defendant argues only that this is a "negligence-based cause[] of action grounded in the notion

that Capital One owed her a duty of care to protect her from identity theft, and breached that

---

[49] R. Doc. 1-2 at 17 ¶ 93.
[50] *Id.*

duty."[51]  As previously noted, Defendant argues that it did not owe a duty to Plaintiff, as a non-customer of Capital One.[52]  And as with the prior statute, the plain language of this statute imposes a duty to disclose certain records on "[e]ach creditor who grants credit as a result of information which was obtained through an identity theft";  no financial institution/customer relationship is listed as a prerequisite for liability by said creditor.  Once again, the Court finds Defendant's argument here without merit, as it does not address a duty owed under this statute.   The Court also has found no guiding case law interpreting or applying this statute, other than in the context of prescription or peremption, which is not applicable.

Here, Plaintiff argues that section 3568(B) imposed a duty on Defendant to disclose the records of the allegedly fraudulent accounts in her name, that she requested said records "at least 15 times," that she furnished proof of identity and an Identity Theft Report, and that Defendant failed to provide Plaintiff with said records.  Based on these allegations, the Court finds a claim under La. R.S. 9:3568(B) has sufficiently been alleged and recommends denial of Defendant's Rule 12(b)(6) Motion as to this claim.

## 12.    Breach of Contract

Finally, Plaintiff asserts a breach of contract claim (Claim 15) against Defendant.   As asserted by Plaintiff, "[i]n June 2019, the parties entered into an oral contract" in which "Defendant offered to close the Accounts and delete the false representations in exchange for Plaintiff's written complaints, copy of her social security card, and copy of her driver's license."[53]  Plaintiff further alleges that "[w]hen the parties orally discussed the terms of that contract, Defendant knew that its performance was time-sensitive, but Defendant has still not performed on that contract which has

---

[51] R. Doc. 7-1 at 8.
[52] *See* FN 40, *supra*.
[53] R. Doc. 1-2 at 18 ¶ 95.

exposed Plaintiff to further breach of her privacy and security and ultimately caused the termination of her employment."[54]  In further describing the alleged oral contract, she claims:

> Upon receipt of Plaintiff's consumer fraud complaints, Defendant knew of the fraud.  An implied covenant of good faith was established between the parties when Plaintiff sent copies of her social security card and her driver's license in exchange for Defendant's offer to close the Accounts and delete the credit entries that had been furnishing [sic] to CRAs.  Plaintiff relied on Defendant's performance to her detriment.[55]

"Under Louisiana law, to assert a breach of contract claim, the plaintiff must show: '(1) the obligor undertook an obligation to perform; (2) the obligor failed to perform the obligation, resulting in a breach; and (3) the failure to perform resulted in damages to the obligee.'" *Shipyards v. Black Elk Offshore Operations, LLC*, No. 15-129, 2020 WL 2331591, at *3 (E.D. La. May 11, 2020), quoting *Sanga v. Perdomo*, 167 So.3d 818, 822 (5th Cir.2014); La. Civ. Code art. 1994; *Favrot v. Favrot*, 10-0986 (La. App. 4 Cir. 2/9/11), 68 So. 3d 1099, 1109.  "A contract is formed by the consent of the parties established through offer and acceptance," meaning "an enforceable contract requires a meeting of the minds."  *Read v. Willwoods Cmty.*, 2014-1475 (La. 3/17/15), 165 So.3d 883, 887.  "The party who demands performance of an obligation must prove the existence of the obligation."  *Shipyards*, 2020 WL 2331591, at *3, quoting La. Civ. Code art. 1831 (internal modification omitted).

Accepting Plaintiff's allegations as true, the Court finds she has sufficiently alleged the existence of an oral contract between herself and Defendant to survive Defendant's Motion to Dismiss.  More importantly, Defendant does not address this claim and argue for its dismissal in its Motion to Dismiss.  As such, the Court finds Plaintiff has pled a breach of contract claim sufficient to withstand Rule 12(b)(6) scrutiny.

---

[54] *Id.*
[55] *Id.* at 7 ¶ 38.

### C.     Motion for More Definite Statement

Finally, as an alternative to its Motion to Dismiss, Defendant requests a more definitive statement of the Complaint by Plaintiff pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.[56]  However, in light of this Court's recommended ruling on Defendants' Rule 12(b)(6) Motion to Dismiss, which gives Plaintiff as opportunity to file an amended complaint, the Court finds that this request is moot and, therefore, recommends it be denied.

### D.     Leave to Amend

Despite the shortcomings outlined above, courts are encouraged to grant leave to amend a complaint once to cure such deficiencies before dismissing a lawsuit with prejudice. *See Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) ("Although a court may dismiss [a deficient] claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so."); *Baxrowz v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) ("Generally a district court errs in dismissing a *pro se* complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend.").  Given the record and Plaintiff's *pro se* status, the Court recommends that Plaintiff be given leave to file an amended complaint, should she wish to cure the foregoing deficiencies.

However, despite herein recommending Plaintiff be given leave to amend her Petition, should Plaintiff either fail to amend her Petition, or should her amended Petition fail to adequately state a claim under the TCPA, the only federal statute invoked in Plaintiff's Petition and the source of this Court's federal question jurisdiction over this matter, the Court should not exercise

---

[56] R. Doc. 7-1 at 17.

supplemental jurisdiction over any remaining state law claims. Those claims, therefore, would be remanded to the Baton Rouge City Court.

## IV.     CONCLUSION AND RECOMMENDATION

Based on the foregoing,

**IT IS RECOMMENDED** that the Motion to Dismiss (R. Doc. 7) filed by Defendant Capital One Bank (USA), N.A. be **GRANTED IN PART** and **DENIED IN PART**.    It is recommended that Defendant's Motion be granted with regard to Plaintiff's claims for false light (Claim 1), fraudulent inaction (Claim 2), intentional misrepresentation (Claim 3), abusive debt collection practices (Claim 4), abuse of right (Claim 5), extortion (Claim 6), defamation (Claim 9), intentional infliction of emotional distress (Claim 10), negligent infliction of emotional distress (Claim 11), TCPA (Claim 12), and fraud by misrepresentation or silence under Article 1953 (Claim 13), and that those claims be **DISMISSED WITHOUT PREJUDICE**.  All other claims remain pending.

**IT IS FURTHER RECOMMENDED** that Defendant's alternative Motion for a More Definite Statement be **DENIED AS MOOT**.

**IT IS FURTHER RECOMMENDED** that Plaintiff be ordered to file an amended complaint within **21 days** of the Court's ruling to the extent Plaintiff wishes to cure the deficiencies outlined above.  Should Plaintiff decline to file an amended complaint, those claims currently being dismissed without prejudice should be dismissed with prejudice.  In addition, any surviving state law claims should be remanded to the Baton Rouge City Court.

Signed in Baton Rouge, Louisiana, on March 14, 2023.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**